LAMPRECHT ETC. *v.* PIPER AIRCRAFT
CORPORATION

[No. 404, September Term, 1970.]

*Decided May 12, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*B. Ford Davis,* with whom were *Wilbur D. Preston, Jr.,* and *Whiteford, Taylor, Preston, Trimble & Johnston* and *George C. Evering* on the brief, for appellant.

*Charles E. Iliff, Jr.,* with whom were *John H. Mudd* and *Semmes, Bowen & Semmes* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

In 1969 Jerome Lamprecht, who had bought a Comanche airplane manufactured by Piper Aircraft Corporation (Piper) from Friendship Flying Service, Inc. (Friendship), sued both corporations in the Circuit Court for Anne Arundel County to recover damages suffered when he made a forced landing in Maryland, alleging negligence and breach of warranties as to a defective muffler system that brought about the crash. The question at issue is whether Piper, a Pennsylvania corporation, can be brought into the Maryland Court under the long arm statute. Judge Childs held that it could not.

Lamprecht is an individual who resides in Maryland. Piper has its principal place of business in Lock Haven, Pennsylvania. It manufactures planes in Lock Haven and in Vero Beach, Florida. It uniformly sells the planes it makes to independent distributors, who in turn sell through dealers such as Friendship. The distributor for Maryland dealers is located in Manassas, Virginia. Transfer takes place at the factory with the distributor taking possession on a "fly away factory" basis.

Lamprecht stresses that Piper uses regularly a national advertising campaign in magazines such as *Business Week* and *Time* to promote the sale of Piper aircraft and the use of flight training courses to be given at

a Piper Flight Center (local dealers). If a Maryland resident writes Piper in response to a sales advertisement, he is sent price lists, pamphlets describing various Piper models, and "Piper user reports" stressing the worth, virtue and desirability of Piper planes, and a letter signed by Piper's Director of Domestic Sales telling the Maryland inquirer that he will be contacted by "our representative in your area." If a Maryland resident writes Piper about flying lessons, he is sent a certificate worth $5 towards the regular price for lessons, a booklet on the possibility of purchasing a plane in partnership with others, a pamphlet advertising a particular plane, and a letter from the sales director saying that "Your nearest Piper Flight Center will contact you * * *." Piper sends what it calls "a [Maryland] Prospect Reference Form" to the Virginia distributor which must be returned promptly to Piper. Piper regularly corresponds with Maryland owners and operators of Piper planes with regard to proper maintenance and service. Piper says Friendship routinely purchases Piper planes from the Virginia distributor.

Piper stresses these considerations: it has not qualified to do business in Maryland, it has no resident agent here, it does not itself sell or deliver to anyone in Maryland, and derives no direct revenue from any transaction in Maryland. Although the national advertising and the subsequent mail advertising contemplate contact between a prospective purchaser and a dealer in Maryland, Piper does not itself contact or deal with the Maryland dealer. Dealers are established by the distributors. No part of any communication from Piper, either to the prospect or the distributor suggests or solicits any order or other transaction between the Maryland resident and Piper. Although Piper sends service and maintenance bulletins to Maryland owners and operators, there is no evidence that any servant of Piper ever engages in any activity within Maryland or, indeed, has ever entered Maryland.

Code (1969 Repl. Vol.), Art. 75, § 96 (a), as it read in 1969 in the parts here pertinent, provided that:

> "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's
>
> * * *
>
> "(4) Causing tortious injury in this State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in this State or derives substantial revenue from food or services used or consumed in this State * * *."

By Ch. 540 of the Laws of 1970, effective July 1, 1970, the Legislature added to "food and services" as producers of substantial revenue "goods" and "manufactured products" so that the clause read: "or derives substantial revenue from goods, food, services or manufactured products used or consumed in this State." Both sides agree that the law as it stood in 1969 is what is now before us and that under that law, if Piper is to be subject to in personam jurisdiction for its act or omission outside Maryland that caused tortious injury in Maryland, it must regularly do or solicit business or engage in any other persistent course of conduct in the State.

Lamprecht urges earnestly that Piper both solicits business and engages in a persistent course of action in this State. He relies on the statement of Professor Auerbach in his article "The 'Long Arm' Comes to Maryland," 26 Md.L.Rev. 13, 43 (quoted by us in *Vitro Electronics v. Milgray*, 255 Md. 498, 505-506), in which in reference to soliciting business or engaging in any other persistent course of conduct in the State the author says:

> "Decisions which provide the authority for this formulation include such patterns of conduct as direct solicitation by sales representatives in the state, the sending of price lists to customers

through the mails, general mail advertising combined with advertising in periodicals circulated in the state, participation with the locally franchised dealer in promoting sales, and the presence in the state of service and maintenance representatives." (footnotes omitted)

Piper in reply says that the soliciting contemplated by the statute is personal solicitation of business for the solicitor and that advertising in magazines that will be read by some Maryland residents and answering letters of inquiry is not personal solicitation so as to produce business for the dealers. It says further—and similarly—that correspondence with Maryland residents is not a course of conduct in Maryland at all. It confesses and avoids Professor Auerbach's statement by saying that the cases therein relied on involved some personal activity such as that found in *Novack v. National Hot Rod Association*, 247 Md. 350, in which the foreigner regularly sent inspectors into Maryland, and *Harris v. Arlen Properties*, 256 Md. 185, where agents of the foreigner scouted for Maryland property, filed for permits (and so invoked the benefit of Maryland law) and transacted other matters in Maryland.

The application of the long arm statute to a particular situation entails dual considerations — first, that of statutory construction and second, that of constitutionality. We have held the legislative purpose, to a great degree, was the expansion of judicial jurisdiction up to but not beyond the outermost limits permitted in this area by the due process decisions of the Supreme Court. See *Harris v. Arlen Properties, supra* at pages 195 and 196 of 256 Md. and cases cited. Therefore, consideration of the constitutional question in each case is essential not only for its own purpose but also as a significant factor in the interpretation of the statute.

We are not impressed with Piper's argument that its advertising and its correspondence were not directed or

related to sales by it to Maryland people. We are impressed with the answer to a similar argument given by the Supreme Court of California (in Bank) in *Buckeye Boiler Company v. Sup. Ct. of Los Angeles County*, 458 P. 2d 57, 64, when it said:

> "A manufacturer whose products pass through the hands of one or more middlemen before reaching their ultimate users cannot disclaim responsibility for the total distribution pattern of the products. If the manufacturer sells its products in circumstances such that it knows or should reasonably anticipate that they will ultimately be resold in a particular state, it should be held to have purposefully availed itself of the market for its products in that state. * * * in *Regie Nationale Des Usines Renault v. Superior Court*, 208 Cal. App. 2d 702, 703, 25 Cal. Rptr. 530, 531, the court refused to exempt the defendant, a French corporation, from jurisdiction in a suit apparently for personal injuries although the defendant did not sell its cars directly in California but rather 'inaugurate[d] a flow of its products to * * * California' through a 'Chain of sales' involving a wholly-owned American subsidiary and independently-owned distributorships and dealerships. The court held that the indirect manner in which the defendant dealt with California consumers 'effect[s] little, if any, alteration in the jurisdictional situation.' "

We tend to the view that Piper did solicit business and engage in a persistent course of conduct in Maryland, but we harbor a lingering doubt that the quality and nature of its activities make it constitutionally fair to subject it to jurisdiction. To use the phrase used by the Supreme Court in *Hanson v. Denckla*, 357 U. S. 235, 253, 2 L.Ed.2d 1283, 1298, we ask ourselves whether Piper's activities

consist of "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," and we are not certain of the answer.

We see as the answer to the problem a remand of the case, permissible under *Gilliam v. Moog Industries*, 239 Md. 107, 113, for a determination of whether under the law, as it was amended in 1970 and now stands, Piper "derives substantial revenue from * * * manufactured products used * * * in this State." This is a test which can raise little if any constitutional problems and one the answer to which in each case can be determined with relative ease and simplicity. Professor Auerbach, *op. cit.*, says at p. 43:

> "Sufficient contact exists according to the Maryland statute if the defendant 'derives substantial revenue from [products] used or consumed in this state.' A defendant who neither makes solicitations nor engages in any other form of activity in Maryland might still be subject to Maryland jurisdiction, even though his negligence occurred outside the state and the injury-causing item is brought into the state by an independent distributor. There would be jurisdiction over such a defendant if he earns substantial revenue from the sales of his product in Maryland. What is 'substantial' would depend upon the facts of each case."

See on the point of substantiality of revenue *Buckeye Boiler Company v. Sup. Ct. of Los Angeles County, supra*, and *Stewart v. Bus and Car Co.*, 293 F. Supp. 577 (N.D. Ohio).

We point out that under § 96 a (4) a defendant is amenable to personal jurisdiction if it solicits business or engages in other persistent course of conduct or derives substantial revenues from its products used or consumed

in Maryland. Gratification of any one of the three tests is sufficient.

> *Case remanded without affirmance or reversal for further proceedings conformable to the opinion herein, costs to abide the ultimate result.*