# GEELHOED *v.* JENSEN

[No. 118, September Term, 1975.]

*Decided March 4, 1976.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ., and HARRY A. COLE, Associate Judge of the Eighth Judicial Circuit, specially assigned.

*Gary Howard Simpson* for appellant.

*C. Oliver Goldsmith* and *Robert S. Bourbon* for appellee.

LEVINE, J., delivered the opinion of the Court.

This case raises issues of jurisdiction involving the separate requirements of the Maryland long arm statute, Maryland Code (1974), § 6-103 of the Courts and Judicial Proceedings Article, the Due Process Clause of the Fourteenth Amendment, and their interaction. The question, originally presented in the trial court by a motion raising preliminary objection, is the validity of the exercise of in personam jurisdiction over a nonresident defendant who was not served with process in the state and who has not submitted to the jurisdiction of the court. After hearing argument on the motion, the trial court, for want of jurisdiction over the person of the defendant, issued an order dismissing appellant's declaration in an action sounding in criminal conversation.[1] After an appeal was

---

1. It will be presumed that the substantive law of Maryland applies. Appellee argues for the first time on appeal that the law of Canada, and more specifically the law of Quebec Province, may be the appropriate choice for application under these facts. Appellee further argues that the relevant Canadian law may not permit a cause of action in criminal conversation. He failed, however, to file timely notice of intent to rely upon foreign law as required by Maryland Code (1974), § 10-504 of the Courts and Judicial Proceedings Article, which requires that reasonable notice be given in the

taken to the Court of Special Appeals, this Court granted a writ of certiorari.

The facts before the trial court on the motion to dismiss revealed a unique factual setting. Appellant and his wife were at all relevant times domiciled in Maryland. Appellee, a lifetime domiciliary of California, took up residence in Howard County, Maryland, in July of 1969 and remained for two years, until June 1971, while fulfilling his Selective Service obligation by working at the National Institutes of Health in Bethesda, Maryland, and at the Armed Forces Institute of Pathology in Washington, D. C. In June of 1971, appellee returned to California. While working at the Armed Forces Institute, he became acquainted with the wife of appellant.

In his original declaration, appellant, in support of his claim of criminal conversation involving his wife and appellee, alleged acts of intercourse during the period March 9 to April 28 of 1971, without specifying where the alleged acts occurred. Appellant now concedes, however, that he can prove no act of sexual intercourse in Maryland. The only provable act occurred, as it develops, in Montreal, Canada, between March 8 and 13 of 1971, while appellee and appellant's wife were both attending a medical convention. Appellee, as already noted, then had his principal residence in Maryland.

The sole basis for appellant's claim of jurisdiction is the long arm statute, Code (1974), § 6-103 of the Courts and Judicial Proceedings Article,[2] which is the source of

pleadings or otherwise so that the adverse parties may have adequate opportunity to prepare arguments on the foreign law. Though this Court may in its discretion take judicial notice of foreign law, even where the statutory notice is not given, we shall not take notice for purposes of this appeal since the proceedings below were conducted on the assumption that Maryland law was applicable. See Frericks v. General Motors Corp., 274 Md. 288, 296-97, 336 A. 2d 118 (1975).

2. " § 6-103. Cause of action arising from conduct in state or tortious injury outside state.

"(a) *Condition.* — If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

(b) *In general* — A court may exercise personal jurisdiction over a person, who directly or by an agent:

authority in Maryland for the exercise of personal jurisdiction over nonresidents. In the trial court, appellant relied on two subsections of § 6-103, subsections (b) (3) and (b) (4), which provide:

> "(b) *In general.* — A court may exercise personal jurisdiction over a person, who directly or by an agent:

> \* \* \*

> "(3) Causes tortious injury in the state by an act or omission in the state;

> "(4) Causes tortious injury in the state or outside of the state by an act or omission outside the state if he regularly does or solicits business, engages in any other persistent course of conduct in the state or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the state[.]"

Appellant has since abandoned his reliance on subsection (b) (3) pursuant to his concession that he can prove no act of sexual intercourse in Maryland,[3] and now relies exclusively on subsection (b) (4).

---

(1) Transacts any business or performs any character of work or service in the state;

(2) Contracts to supply goods, food, services, or manufactured products in the state;

(3) Causes tortious injury in the state by an act or omission in the state;

(4) Causes tortious injury in the state or outside of the state by an act or omission outside the state if he regularly does or solicits business, engages in any other persistent course of conduct in the state or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the state;

(5) Has an interest in, uses, or possesses real property in the state; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the state at the time the contract is made, unless the parties otherwise provide in writing."

**3.** For purposes of the long arm statute, the pertinent "act" in the tort of criminal conversation is, as further developed herein, the act of sexual

Application of the long arm statute is a two-step process. First, it must be determined whether the statute purports to authorize the assertion of personal jurisdiction. And secondly, it must be determined whether an exercise of jurisdiction permitted by the statute violates the Due Process Clause of the Fourteenth Amendment. It is important to note, however, that these determinations are interrelated. As noted repeatedly in the cases, the long arm statute represents an effort by the Legislature to expand the boundaries of permissible in personam jurisdiction to the limits permitted by the Federal Constitution. *See, e.g., Lamprecht v. Piper Aircraft Corp.*, 262 Md. 126, 130, 277 A. 2d 272 (1971); *Harris v. Arlen Properties*, 256 Md. 185, 195-96, 260 A. 2d 22 (1969); *Gilliam v. Moog Industries*, 239 Md. 107, 111, 210 A. 2d 390 (1965). It is therefore necessary to interpret the statute in light of constitutional limitations, rendering where possible an interpretation consistent with those limitations. *Lamprecht v. Piper Aircraft Corp., supra,* 262 Md. at 130.

The precipitating act of the tort of criminal conversation is the sexual act itself. The Restatement of Torts § 685 (1938) defines the tort of criminal conversation committed with a married woman as follows:

> "One who, without the husband's consent, has sexual intercourse with a married woman is liable to the husband for the harm thereby caused to any of his legally protected marital interests."

---

intercourse involving the defendant and the plaintiff's spouse. Subsections (b) (3) and (b) (4) of the Maryland long arm statute distinguish between the tortious act and injury, and in a sense are therefore more restrictive than long arm statutes like Ill. Stat. Ann. c. 110, § 17 (1) (b) which provides jurisdiction as to any cause of action arising from the "commission of a tortious act within this State." *See* Uniform Interstate and International Procedure Act, § 1.03, Commissioner's Comment, 13 U.L.A. 285-86 (1975). In Gray v. American Radiator & Standard Sanitary Corp., 22 Ill. 2d 432, 176 N.E.2d 761, 762-63 (1961), the Illinois Supreme Court held that the above quoted language was satisfied where an act or omission occurred outside the state causing an injury within the state. The rationale there was that the "tortious act" is not complete until the injury occurs and since the place of a wrong is where the last event occurs which makes the actor liable, the "tortious act" occurred in Illinois. The Maryland statute, § 6-103 (b) (4), imposes additional jurisdictional requirements when the act occurs outside the state. *See* Beaty v. M.S. Steel Company, 401 F. 2d 157, 159-60 (4th Cir. 1968), *cert. denied,* 393 U. S. 1049 (1969).

*See also* Restatement of Torts § 690 (1938) (establishing liability to wife for criminal conversation with a married man). In the instant case, then, the "act" which caused the tortious injury occurred "outside the state," in Montreal, Canada, thus placing the action within subsection (b) (4) of the Maryland statute, and conversely placing it outside subsection (b) (3) which requires "an act or omission in the state."

The requirement of subsection (b) (4) that the act cause "tortious injury in the state or outside the state," is not in itself a separate requirement, since obviously the injury can have occurred anywhere. The distinction made, however, is of some significance in determining whether one of the three alternative requirements of subsection (b) (4) stated in the second clause is satisfied in light of the requirements of due process, about which more will be said later.

The statute requires, in subsection (b) (4), that where tortious injury is caused within or without the state by an act outside the state, the defendant have certain independent contacts with the state. The second clause of subsection (b) (4) provides in the alternative that the court may exercise personal jurisdiction over the defendant

> " . . . if he regularly does or solicits business, *engages in any other persistent course of conduct in the state* or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the state[.]" (emphasis added).

Appellant relies only on the second alternative, "engages in any other persistent course of conduct in the state," in seeking to establish that the court may exercise jurisdiction over appellee. *See Johnson v. Helicopter & Airplane Services Corp.*, 389 F. Supp. 509 (D. Md. 1974); *Topik v. Catalyst Research Corporation*, 339 F. Supp. 1102 (D. Md. 1972), *aff'd*, 473 F. 2d 907 (4th Cir.), *cert. denied*, 414 U. S. 910 (1973); *Lamprecht v. Piper Aircraft Corp., supra; Harris v. Arlen Properties, supra; Novack v. Nat'l Hot Rod Ass'n*, 247 Md. 350, 231 A. 2d 22 (1967).

In opposing the jurisdiction of the Maryland court,

appellee first contends that the "persistent course of conduct" required by the statute must involve commercial activity. Simply stated, his argument is that the maxim "ejusdem generis" is applicable and that since the other alternative requirements indicate commercial activity, the requirement in question must so indicate, thus narrowing the ordinary meaning of the words. We find that argument unpersuasive here.

The purpose of the long arm statute, as previously discussed, is to expand jurisdiction to constitutional limits. Personal jurisdiction is not limited by the Due Process Clause to defendants whose contacts arise out of commercial activity. *Van Wagenberg v. Van Wagenberg*, 241 Md. 154, 169-70, 215 A. 2d 812, *cert. denied*, 385 U. S. 833 (1966). The reading of the statute advanced by the appellee, then, would result in an unwarranted limitation of jurisdiction at variance with the legislative intent. Further, the references to business conduct in the alternative phrases are of an almost all-inclusive nature with respect to commercial activity, thus rendering the "persistent course of conduct" requirement mere surplusage under the interpretation advanced by appellee. We hold, therefore, that the "persistent course of conduct" referred to in subsection (b) (4) of § 6-103 need not be conduct of a commercial nature. *Cf. Malinow v. Eberly*, 322 F. Supp. 594 (D. Md. 1971); *Harris v. Arlen Properties, supra*, 256 Md. at 197-98.

The principal thrust of appellee's argument, however, is that the facts of this case do not show a "persistent course of conduct" within the meaning of the long arm statute, or, in the alternative, that the exercise of personal jurisdiction over this nonresident defendant is violative of the Due Process Clause. It remains to be determined, then, whether the nonresident appellee's contacts with Maryland are sufficient for purposes of the long arm statute and due process to subject him to the jurisdiction of the Maryland courts. As already noted, the legislative purpose in enacting the long arm statute was to expand jurisdiction to the limits permitted by due process. When terms having a relatively flexible quality, such as "persistent course of conduct," are

used in the statute, they necessarily take their meaning from that legislative purpose. In the case of the long arm statute, such terms are meant to be coextensive with the requirements of due process. *See Krashes v. White,* 275 Md. 549, 559, 341 A. 2d 798 (1975).

Constitutional limitations on the exercise of jurisdiction by a state over a nonresident have been considered in three opinions of the Supreme Court: *Internat. Shoe Co. v. Washington,* 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945); *McGee v. International Life Ins. Co.,* 355 U. S. 220, 78 S. Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson v. Denckla,* 357 U. S. 235, 78 S. Ct. 1228, 2 L.Ed.2d 1283, *reh. denied,* 358 U. S. 858 (1958). The decision in *International Shoe* marked the abandonment of the "physical presence" theory of jurisdiction enunciated in *Pennoyer v. Neff,* 95 U. S. 714, 24 L. Ed. 565 (1877), and the establishment of limitations on the exercise of jurisdiction based on due process. The Supreme Court posited the due process standard against which the exercise of personal jurisdiction is tested thusly:

> " . . . due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Internat. Shoe Co. v. Washington, supra,* 326 U. S. at 316 (citation omitted).

The demands of due process are met, said the Court, when the contacts of the defendant with the forum "make it reasonable, in the context of our federal system of government, to require [the defendant] to defend the particular suit which is brought there." *Id.* at 317. The test is "the quality and nature of the activity in relation to the fair and orderly administration of the laws." *Id.* at 319.

The due process standard was amplified in *McGee v. International Life Ins. Co.* and *Hanson v. Denckla,* both *supra. McGee* involved an action brought in California by the beneficiary of a policy of insurance, a California

resident, as was the insured, against a Texas company which was the assignee of the original insurer. The sole contact of the Texas company with California was this single policy of insurance, transferred to the company by a contract of reinsurance sent from Texas to the insured in California. In finding that the Texas company had sufficient contacts with California such that the exercise of jurisdiction by the California courts did not violate due process, the Court held that even a single transaction in the forum may be sufficient for the exercise of jurisdiction, in a suit based on that transaction, where the transaction "had substantial connection with that state." 355 U. S. at 223.

The Court cautioned in *Hanson*, however, that the trend of expansion of personal jurisdiction did not herald the demise of all restrictions that are a consequence of territorial limitations on the power of the states.[4] The cause of action in *Hanson* arose out of a trust settled in Delaware and concerned the effectiveness of the exercise of a power of appointment in Florida. At the time of execution of the deed of trust in Delaware, the settlor was a Pennsylvania domiciliary and the trustee was a Delaware bank. Subsequently the settlor moved to Florida where she attempted to exercise the power of appointment in question. After the death of the settlor, a Florida court, in a proceeding in which the Delaware trustee did not appear, held that the trust, and therefore the power of appointment, was invalid under Florida law. When a Delaware court refused to give full faith and credit to the Florida court's decree, the jurisdiction of the Florida court over the Delaware trust company became the issue.

The Court held that the contacts of the Delaware trust company with Florida were insufficient for the exercise of

---

**4.** The Court did, however, take note of the trend of expansion of personal jurisdiction over nonresidents engendered by the increase in interstate activity, and the corresponding need for jurisdiction over nonresidents. The same progress in communications and transportation which is the occasion of the expansion of interstate activity has correspondingly made defense of a suit in a foreign tribunal less burdensome. Hanson v. Denckla, 357 U. S. 235, 250-51, 78 S. Ct. 1228, 2 L.Ed.2d 1283 (1958).

personal jurisdiction by the Florida courts. The trust company was neither present, nor did it transact any business in Florida. Moreover, this was not a case, said the Court, like *McGee* where the cause of action arose out of a transaction having a substantial connection with the forum. The cause of action in *Hanson*, according to the Court, arose out of the Delaware trust agreement, which, when entered into, had no connection with the Florida forum. It was only years later that there arose any connection between the trust agreement and the State of Florida, after the settlor moved there and initiated several "bits" of trust administration from Florida while receiving periodic payments from the trust company of trust income; it was also in Florida, of course, that the settlor executed the power of appointment in question. These connections between the trust agreement, the transaction out of which the cause of action arose, and the forum, because of their nature and quality, were found to lack the substantiality necessary for the exercise of jurisdiction over the Delaware trust company.

The Court held that as a general rule, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." 357 U. S. at 253. In *Hanson*, the connections between the Delaware trust company and the Florida forum were only such as were initiated by and for the benefit of the settlor. Of this fact, the Court said:

> "The application of [the] rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.*

The Court found no purposeful act of the Delaware trust company sufficient to justify the exercise of personal jurisdiction by the Florida courts.

Thus, the sufficiency of the defendant's contacts with the

forum is established through both his general contacts with the forum, and through his purposeful participation in a transaction having substantial connection with the forum. A number of factors relevant to the determination whether a defendant has sufficient "minimum contacts" with the forum to satisfy due process may be identified. Not only the quantity, but also the nature and quality of the contacts are material. The source of the action, whether it arises out of contacts of the defendant with the forum, or whether the cause of action is unrelated to such contacts, is of considerable significance. Compare *McGee v. International Life Ins. Co., supra,* with *Perkins v. Benguet Mining Co.,* 342 U. S. 437, 72 S. Ct. 413, 96 L. Ed. 485, *reh. denied,* 343 U. S. 917 (1952). Of somewhat lesser importance, though nonetheless relevant, are the interest of the forum state in protecting the rights or privileges involved in the cause of action and the convenience of the parties. *See McGee v. International Life Ins. Co., supra,* 355 U. S. at 223 ("California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims"); *Internat. Shoe Co. v. Washington, supra,* 326 U. S. at 317 ("an 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant"); *see also Van Wagenberg v. Van Wagenberg, supra,* 241 Md. at 169.

The principal contacts of appellee with the State arose from his residence in the State for two years, albeit while he apparently retained a California domicile. Appellee's contacts with the State, however, were not of a passing nature; his home in Maryland was his principal place of abode for two years, and one of his two places of business was likewise located in the State. Working and maintaining one's principal residence in the State would seem as a general proposition to constitute engaging in a "persistent course of conduct" in the State and satisfy due process in the case of a natural person. *Cf.* Restatement (Second) of Conflicts § 30 (1971).

Appellee urges that his presence in Maryland was not voluntary because he was required to work in the State by

the Public Health Service in connection with his Selective Service obligation. He relies on language in *Hanson v. Denckla, supra,* 357 U. S. at 253, to the effect that in order to subject a nonresident defendant to personal jurisdiction, it must be shown "in each case that there be some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Appellee is not, however, protected by the principle enunciated in that case. One who resides in a state necessarily avails himself of the benefits and protections of its laws. The taking up of residence is, in fact, the quintessential act by which one avails himself of the privilege of conducting activities in the state. The *Hanson* principle does not mandate an inquiry into motive; it is sufficient that, for whatever reason, the defendant has purposefully availed himself of the privilege of conducting activities in the forum. To hold otherwise would be to permit any person who finds himself for some reason compelled to reside in the forum to escape its jurisdiction with respect to acts performed there.[5]

Nor is there any merit to appellee's argument that § 6-103 requires that the cause of action arise out of the defendant's contact with the forum. Due process imposes no such requirement. In *International Shoe,* the Court alluded favorably to prior cases in which jurisdiction was found to exist over corporate defendants on causes of action distinct from the activities of the corporation in the forum. 326 U. S. at 318. In *Perkins v. Benguet Mining Co., supra,* a shareholder suit was instituted against a mining company with operations located in the Philippines. During World War II, when the suit was commenced, mining operations were discontinued and the routine administrative affairs of the corporation were conducted in Ohio. Though the cause of action, according to the Court, arose out of the corporation's activities elsewhere, jurisdiction was found in Ohio. The Court found the activities of the defendant in Ohio to be

---

5. Arguably, appellee's residence in Maryland was, in any event, a voluntary act, since one of his two professional assignments was in the District of Columbia.

sufficiently "continuous and systematic" to justify maintenance of the action here.

Thus, though due process requires more substantial contacts where, as here, the cause of action arose elsewhere, sufficiently systematic and continuous contacts will nevertheless justify the exercise of jurisdiction. Appellee's living and working in the State for a period of two years constituted a course of conduct at least as continuous and systematic as that of the defendant in *Perkins*.

Appellee also relies on subsection (a) of § 6-103 for his assertion that the cause of action, for application of subsection (b) (4), must have arisen out of the defendant's "persistent course of conduct" in the State. Subsection (a) states:

> "(a) *Condition.* — If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section."

As already discussed, due process does not require that the cause of action arise out of the defendant's contacts with the forum. The reference to "act enumerated in this section" with respect to subsection (b) (4) refers only to the act or omission which causes tortious injury; to hold otherwise would be to impose a limitation not required by due process. Furthermore, subsection (b) (4) would add little or nothing to the statute if it were held that the cause of action must arise out of the defendant's doing or soliciting business, engaging in any other persistent course of conduct or deriving substantial revenue from activities in the State. Such actions would be provided for in other sections of § 6-103.[6]

---

6. The predecessor of § 6-103, Maryland Code (1957, 1969 Repl. Vol.) Art. 75, § 96, followed more closely the Uniform Interstate and International Procedure Act, § 1.03, 13 U.L.A 285 (1975), from which the Maryland long arm statute was adopted. Groom v. Margulies, 257 Md. 691, 702, 265 A. 2d 249 (1970). There, what is now subsection (a) was subsection (b), and the introductory language of subsection (a) was: "A court may exercise jurisdiction over a person, who acts . . . as to a cause of action arising from the person's . . . ," thus more clearly referring, with respect to subsection (b) (4), only to the act or omission causing the tortious injury. The purpose

A more significant question, perhaps, arises from the fact that in this case appellee's contacts with the State had ceased before the commencement of the action. This fact is not, however, dispositive, since here appellee was a resident of the State at the time the cause of action arose and the transaction out of which the cause of action arose, the tortious act of criminal conversation, though it occurred in Canada, bore a substantial relationship to the State. *See McGee v. International Life Ins. Co., supra,* 355 U. S. at 223. The injury connected with the tort of criminal conversation is the injury to the feelings and to the marital rights of the husband. *See Tinker v. Colwell,* 193 U.S. 473, 485, 24 S. Ct. 505, 48 L. Ed. 754 (1904); 2 T. Cooley, Torts § 167 (1932); 1 F. Harper and F. James, The Law of Torts § 8.3 (1956). Appellant, the husband herein, was domiciled in the State at the time of the commission of the tort. Furthermore, the situs of the marital relationship, to the extent that it had a situs, was in Maryland, since this was not only appellant's domicile, but also the marital domicile at the time the tort was committed. Therefore, it may be concluded that appellee's act outside the State in fact caused injury within the State.

Further connecting the tort with the State is the fact that, since appellee had become acquainted with appellant's wife while in the State, the effect that his tortious conduct would have in the State was clearly foreseeable. *See Lamprecht v. Piper Aircraft Corp., supra,* 262 Md. at 131; *see also Buckeye Boiler Co. v. Sup. Ct. of Los Angeles County,* 71 Cal. 2d 893, 80 Cal. Rptr. 113, 458 P. 2d 57, 64 (1969). Additionally, it is significant that Maryland has a special interest in the domestic relations of its citizens and therefore in providing a forum for them to remedy alleged wrongs to those relations.

---

of the predecessor of subsection (a) was to prevent the general exercise of jurisdiction over a defendant as to unrelated causes of action when jurisdiction is obtained over him pursuant to a specific section of the act. In other words, jurisdiction as to each cause of action over a nonresident defendant must find specific authorization in the statute. It appears that the Legislature sought to combine the functions of the original subsection (b) and the original introductory language of subsection (a) in one subsection, the current subsection (a).

See *Williams v. North Carolina*, 317 U. S. 287, 63 S. Ct. 207, 87 L. Ed. 279 (1942).

Finally, it is noted that Maryland may be the most convenient forum in which to try this action, since the plaintiff and most witnesses likely to be called on the question of injury are in the State.

We hold, therefore, that personal jurisdiction over the appellee is authorized by the Maryland long arm statute, Code (1974), § 6-103 (b) (4) of the Courts and Judicial Proceedings Article, and that the exercise of such jurisdiction does not violate the Due Process Clause of the Fourteenth Amendment. Accordingly, the motion raising preliminary objection should have been denied.

> *Judgment reversed; remanded for further proceedings; appellee to pay costs.*