Janice L. GREENWOOD and Samuel H. Greenwood

v.

The TIDES INN, INCORPORATED.

Civil No. K–80–1429.

United States District Court, D. Maryland.

Dec. 16, 1980.

---

J. Frederick Motz, Brian C. Parker and Venable, Baetjer & Howard, Baltimore, Md., for plaintiffs.

Frank X. Gallagher, Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

On or about November 11, 1978, while plaintiffs (wife and husband) were staying at the Tides Inn, a hotel located in Irvington, Virginia owned and operated by defendant, plaintiff wife slipped and fell on a walkway on the hotel premises. Plaintiffs herein sue defendant for negligence and breach of contract,[1] and claim damages for personal injuries to the wife and also jointly for loss of consortium. Defendant has moved to dismiss for want of personal jurisdiction. Plaintiff contends that long-arm jurisdiction is present under Maryland Annotated Code, Courts and Judicial Proceedings, Section 6–103(b)(4).[2]

---

1. Diversity jurisdiction is present since plaintiffs are Maryland citizens, and defendant, Tides Inn, is a Virginia Corporation with its principal place of business in Virginia.

2. Section 6–103 provides in relevant part:

(a) *Condition.*—If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

(b) *In general.*—A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

\* \* \* \* \* \*

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives

The requirements of subsection (b)(4) are satisfied if defendant caused a tortious injury in or outside of Maryland, but only if defendant's contacts with Maryland satisfy one or more or all of the three prongs of that subsection, *i. e.*, that defendant (1) "regularly does or solicits business" in Maryland, or (2) "engages in any other persistent course of conduct" in Maryland, or (3) "derives substantial revenue from goods," etc. "used or consumed" in Maryland.[2A] There is no question but that plaintiff has alleged a tortious injury outside of Maryland. The issue, therefore, is whether one of the three prongs of (b)(4) is satisfied.

Defendant has numerous contacts with Maryland residents. Two or three times a year, defendant mails to some of its former guests copies of the "Tides Times," a newsletter describing its activities.[3] The "Tides Times" was mailed to 1,550 Maryland residents in 1980, representing 12.5% of the entire subscriber list.[4] The newsletter frequently contains information about changes in the operation of the Tides, and also contains language which in effect solicits business. For example, the January, 1980 issue of the "Tides Times" urged golfers to "just tell us when you want to tee off on the fabulous Golden Eagle Golf Course," and suggested that readers "Make you [sic] plans now to come see what we mean and to really enjoy our QUIET QUALITY!" The June, 1979 edition stated "come see us and you won't be stranded [by the energy crisis] but more important, come see us and you'll be just as pleased or more pleased than you were on your previous visits." The January, 1979 issue notes: "Both the Inn and the Lodge will re-open on March 15th this year and we sure hope you will plan on joining your friends in Irvington in 1979." The newsletter continued, "we look forward to welcoming you back to the Tides Inn and the Tides Lodge for a fine '79 !" Defendant also solicits business through advertising in nationally distributed magazines, including six advertisements in the "New Yorker" each year and two to four more in "Golf" and "Golf Digest" magazines.[5] It is also to be noted that defendant maintains a toll free telephone number to encourage non-local residents to make reservations.[6]

Many hundreds of Maryland residents have stayed at the Tides Inn in recent years.[7] "Most of the guests of the Tides Inn made advance reservations so that presumably a substantial part of the [Maryland guests] would have made advance reservations." [8]

In *Lamprecht v. Piper Aircraft Corp.*, 262 Md. 126, 277 A.2d 272 (1971), Chief Judge Hammond characterized (at 127–28, 277 A.2d 272) defendant's ties to Maryland as follows:

> Lamprecht stresses that Piper uses regularly a national advertising campaign in magazines such as *Business Week* and *Time* to promote the sale of Piper aircraft and the use of flight training courses to be given at a Piper Flight Center (local dealers). If a Maryland res-

---

substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

\* \* \* \* \* \*

**2A.** *See* n.2 *supra.*

**3.** *See* Exhibit E to Defendant's Answers to Plaintiffs' Interrogatories.

**4.** *See* Defendant's Answer to Plaintiffs' Interrogatory No. 4.

**5.** *See* Defendant's Answers to Plaintiffs' Interrogatory No. 4.

**6.** *See* Defendant's Answer to Plaintiffs' Interrogatory No. 11.

**7.** *See* Exhibits A, B, and C to Defendant's Answers to Plaintiffs' Interrogatories.

**8.** *See* Defendant's Answer to Plaintiffs' Interrogatory No. 3.

For 16 months in 1975 and 1976 defendant conducted an air taxi service, flying an estimated three or four Maryland patrons directly to defendant's hotel. Also, the January, 1979 issue of "The Tides Times" discloses that one of the guest buildings at the Tides was then being redecorated by a Baltimore company which had also redecorated other parts of the resort in 1978. That said association with a Maryland decorator is not of import other than in its place in the pattern of solicitations addressed to Marylanders.

ident writes Piper in response to a sales advertisement, he is sent price lists, pamphlets describing various Piper models, and "Piper user reports" stressing the worth, virtue and desirability of Piper planes, and a letter signed by Piper's Director of Domestic Sales telling the Maryland inquirer that he will be contacted by "our representative in your area." If a Maryland resident writes Piper about flying lessons, he is sent a certificate worth $5 towards the regular price for lessons, a booklet on the possibility of purchasing a plane in partnership with others, a pamphlet advertising a particular plane, and a letter from the sales director saying that "Your nearest Piper Flight Center will contact you * * *." Piper sends what it calls "a [Maryland] Prospect Reference Form" to the Virginia distributor which must be returned promptly to Piper. Piper regularly corresponds with Maryland owners and operators of Piper planes with regard to proper maintenance and service. Piper says Friendship routinely purchases Piper planes from the Virginia distributor.

Piper had not qualified to do business in Maryland, had no resident agent in Maryland, did not sell, deliver or provide services in Maryland, and had not derived any revenue itself from any transaction it enjoyed in Maryland. After examining the applicable statutory and case law, Judge Hammond concluded (at 131–32, 277 A.2d 272):

> We tend to the view that Piper *did solicit business and engage in a persistent course of conduct in Maryland*, but we harbor a lingering doubt that the quality and nature of its activities make it constitutionally fair to subject it to jurisdiction. To use the phrase used by the Supreme Court in *Hanson v. Denckla*, 357 U.S. 235, 253, [78 S.Ct. 1228, 1239] 2 L.Ed.2d 1283, 1298, we ask ourselves whether Piper's activities consist of "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the

benefits and protections of its laws," and we are not certain of the answer.

We see as the answer to the problem a remand of the case, permissible under *Gilliam v. Moog Industries*, 239 Md. 107, 113 [210 A.2d 390], for a determination of whether under the law, as it was amended in 1970 and now stands, Piper "derives substantial revenue from * * * manufactured products used * * * in this State." * * * (Emphasis supplied.)

█ In the within case, defendant has caused thousands of newsletters to be sent to Maryland residents inviting them to stay at defendant's hotel. Those acts represent a greater degree of solicitation than that in *Lamprecht*[9] and satisfy the first or "doing business" prong of (b)(4). The due process standard is also met since by sending sheafs of newsletters directly to Maryland residents, defendant availed itself of the privilege of conducting business in this forum state.

█ Defendant's contacts with Maryland also satisfy the second prong of (b)(4) relating to "engag[ing] in any other persistent course of conduct in the state." In *Geelhoed v. Jensen*, 277 Md. 220, 352 A.2d 818 (1976), Judge Levine noted (at 230, 352 A.2d 818) that that second prong requires an examination into the defendant's "general contacts with the forum" and into the defendant's "purposeful participation in a transaction having substantial connection with the forum." Citing to language in *Hanson v. Denckla*, 357 U.S. 253, 78 S.Ct. 1239, to the effect that the defendant must have purposefully availed itself of the privilege of conducting activities within the forum state, Judge Levine wrote (at 231, 352 A.2d 818):

> * * * The *Hanson* principle does not mandate an inquiry into motive; it is sufficient that, for whatever reason, the defendant has purposefully availed himself of the privilege of conducting activities in the forum. To hold otherwise

---

9. Defendant stresses that in 1979, 70% of the recipients of the "Tides Times" returned a card enclosed with the June, 1979 issue which indicated they desired to continue receiving the newsletter. However, that in no way alters the fact that those persons were "solicited."

would be to permit any person who finds himself for some reason compelled to reside in the forum to escape its jurisdiction with respect to acts performed there. (Footnote omitted.)

Thus, whether defendant, Tides, sent its newsletter at its readers behests is irrelevant; what is important is that defendant, Tides, intentionally sent its newsletters into Maryland.

In *McLaughlin v. Copeland*, 435 F.Supp. 513, 528 (D.Md.1977), Judge Blair concluded that (b)(4)'s second prong was satisfied with regard to a defendant who had written six letters to Maryland within four months; had engaged in discussions in an attempt to settle a lawsuit; and had participated in one (and seemingly a few other) meetings in Maryland. While defendant herein did not meet with anyone in Maryland, its other ties to this state evidence more contact than those of the defendant in *McLaughlin*.

■ The third prong of (b)(4),—whether defendant "derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State"— appears not to be satisfied, since defendant's services are not "used or consumed" in Maryland.

■ If jurisdiction is founded on (b)(4), subsection (a) need not be satisfied.[10] *See Carter v. Massey*, 436 F.Supp. 29, 32 (D.Md. 1977) (Miller, J.); *McLaughlin v. Copeland*, 435 F.Supp. 513, 527 (D.Md.1977) (Blair, J.).[11] In *Geelhoed v. Jensen*, 277 Md. *supra* at 232, 352 A.2d 818, Judge Levine wrote:

Appellee also relies on subsection (a) of § 6–103 for his assertion that the cause of action, for application of subsection (b)(4), must have arisen out of the defendant's "persistent course of conduct" in the State. Subsection (a) states:

"(a) *Condition.*—If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of

action arising from any act enumerated in this section."

As already discussed, due process does not require that the cause of action arise out of the defendant's contacts with the forum. The reference to "act enumerated in this section" with respect to subsection (b)(4) refers only to the act or omission which causes tortious injury; to hold otherwise would be to impose a limitation not required by due process. Furthermore, subsection (b)(4) would add little or nothing to the statute if it were held that the cause of action must arise out of the defendant's doing or soliciting business, engaging in any other persistent course of conduct or deriving substantial revenue from activities in the State. Such actions would be provided for in other sections of § 6–103. (Emphasis in original; footnote omitted.)

Counsel have not cited any case—nor is one known to this Court—dealing with the application to hotels and resorts of the Maryland statutory provision set forth in (b)(4). However, the courts of other jurisdictions have spoken with regard to similar statutes in other states. In *MacInnes v. Fontainbleau Hotel Corp.*, 257 F.2d 832 (2d Cir. 1958), Judge Moore concluded that even though the defendant, a Florida hotel, maintained a small office in New York City with three employees, "to receive requests for reservations which were forwarded to Florida for confirmation, to answer inquiries and to distribute brochures" (*Id.* at 834); a New York bank account and a New York telephone directory listing, defendant was not subject to a suit instituted by plaintiffs, citizens of New York, under that latter state's long arm statute for the alleged tortious conduct in Florida of the defendant:

Here the business is that of a hotel. All the facilities and attractions offered

10. *See* n.2 *supra*.

11. While this Court continues to believe that the result reached in *Egeria, Societa di Navigazione Per Azioni v. Orinoco Mining Co.*, 360 F.Supp. 997 (D.Md.1973) (Kaufman, J.) is correct, the view suggested therein—namely, that

what is presently embodied in subsection (a) of Section 6–103 (at the time *Egeria* was written, that was the present subsection (b)) is applicable when (b)(4) (then (a)(4)) is involved— would appear erroneous.

to its guests, such as, shelter, recreation, and entertainment must be furnished to the guests within the confines of the hotel property in Miami Beach. Defendant's entire business, of necessity, must be carried on there. Defendant may seek to attract patrons by newspaper ads throughout the United States and may even have offices in the larger cities for reservation booking purposes, but it cannot deliver in winter Florida warmth and sunshine to residents of the more northerly states on order by mail, freight or express. There can be no out-of-state delivery on orders taken outside of Florida. Thus the nature of the hotel business is quite different from such businesses in which traveling salesmen take orders for interstate delivery and use office space in other states as headquarters for their operations.

The New York statutory basis for long arm reach in a case involving an out-of-state tort was the "doing business" standard. While Judge Moore cited and discussed Supreme Court and other cases in which the constitutional reach of long arm jurisdiction was involved, he may have been doing so only in the context of New York's then existing statutory and case law standards which keyed into only the "doing business" or the first half of the first prong of Maryland's (b)(4) coverage, and not to the second half of the first prong thereof relating to "solicitation" and also not to the second prong thereof relating to "other persistent course of conduct." *See* the discussion of *MacInnes* and other cases in *Schaffer v. Granit Hotel, Inc.*, 110 N.J.Super. 1, 264 A.2d 240, 244 (1970), and *Oliff v. Kiamesha Concord, Inc.*, 106 N.J.Super. 121, 254 A.2d 330 (1969). In both *Schaffer* and *Oliff* the New Jersey courts found jurisdiction over out-of-state hotels. To the same effect, *see Radigan v. Innisbrook Resort and Golf Club*, 150 N.J.Super. 427, 375 A.2d 1229 (1977). In *Schaffer*, the New Jersey court wrote (264 A.2d *supra* at 242) that "the clear purpose" of the applicable New Jersey rule was " 'to vest our courts with jurisdiction over foreign corporations to the outer limits permitted by due process.' "

In *Garfield v. Homowack Lodge, Inc.*, 249 Pa.Super. 392, 378 A.2d 351 (Pa.Super.1977), the Court (at 354) wrote that "[T]he 1972 amendments to the Pennsylvania long-arm statute were designed to remove all Pennsylvania statutory and decisional impediments to the exercise of *in personam* jurisdiction over foreign corporations. [Citations omitted.] They were clearly intended to liberalize Pennsylvania's position. [Footnote omitted.] By extending *in personam* jurisdiction to the full measure consistent with due process standards by § 8309(b), contacts sufficient to satisfy the constitutional due process requirements are now sufficient to satisfy the "doing business" requirement of Pennsylvania law." [Citation omitted.] The New Jersey and Pennsylvania approaches are similar to Maryland's. Thus, in *Geelhoed v. Jensen, supra* (at 224, 352 A.2d 818) Judge Levine wrote:

> * * * As noted repeatedly in the cases, the long arm statute represents an effort by the Legislature to expand the boundaries of permissible in personam jurisdiction to the limits permitted by the Federal Constitution. * * *[12]

In *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745, 748 (4th Cir. 1971), *cert. denied*, 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 2652 (1971), Judge Craven wrote: "If 'plaintiff's injury does not arise out of something done in the forum state, then other contacts between the corporation and the state must be *fairly extensive* before the burden of defending a suit there may be imposed upon it without offending "traditional notions of

**12.** In *Frummer v. Hilton Hotels Int'l., Inc.*, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967) (4–3 decision), remittitur, 20 N.Y.2d 737, 283 N.Y.S.2d 99, 229 N.E.2d 696, *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967), the Court of Appeals of New York, in a case more factually oriented toward long arm coverage than the within case, held that long-arm jurisdiction existed. In *Walter v. Hotel Brunswick*, 3 Conn.Cir. 398, 216 A.2d 212 (1965); *Rose v. Sans Souci Hotel, Inc.*, 51 Misc.2d 1099, 274 N.Y.S.2d 1000 (Sup.Ct.1966), the reach of the long arm statutes involved was not as extensive as is true of the Court of Appeals of Maryland's interpretation of Maryland's statute.

fair play and substantial justice." ' " (Quoting F. James, Civil Procedure 640 (1965)) (emphasis added by Judge Craven). Here, defendant's activities within Maryland would appear to have been sufficiently "fairly extensive" to satisfy the constitutional requirements of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny and of Maryland's interpretation of its statute—an interpretation which coincides with those constitutional requirements. Accordingly, this Court concludes that long-arm jurisdiction is present herein. Defendant's motion will therefore be denied.[13]

---

13. Plaintiff also asserts that jurisdiction is present under (b)(1) as well as under (b)(4), *see* n.2 *supra.* Subsection (b)(1) is satisfied by a defendant who "[t]ransacts any business or performs any character of work or service within the State." However, subsection (a) applies to (b)(1). As of this date the record in this case does not reveal that plaintiffs' causes of action arise in any way out of defendant's transaction of business within Maryland. Accordingly, jurisdiction under (b)(1) would not seem to exist. *Cf., Piracci v. New York City Employees' Retirement System,* 321 F.Supp. 1067 (D.Md.1971) (Thomsen, J.).