523 A.2d 1018

## The POOLE AND KENT COMPANY

v.

## EQUILEASE ASSOCIATES I, et al.

**No. 990, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

April 13, 1987.

**10**

Richard C. Whiteford and Leo P. Hylan (Whiteford, Taylor & Preston, on the brief), Baltimore, for appellant.

James W. Bartlett, III (Kroll, Tract, Harnett, Pomerantz & Cameron, on the brief), Baltimore, for appellees, Communigraphics, Inc. and John R. Wilkins.

Sandra Gale Behrle (Cooper, Brown & Behrle, P.C., New York City, William W. Cahill, Jr., Peter A. Cotorceanu and

Weinberg and Green, on the brief), Baltimore, for appellees Equilease Ass. I and Equilease General Corp.

Argued before MOYLAN, ALPERT, and BLOOM, JJ.

BLOOM, Judge.

Appellant, The Poole and Kent Company, a Maryland corporation, filed in the Circuit Court for Baltimore City an action against The Stone Group Ltd. (Stone Group), a California limited partnership; Stone Services Corporation (Stone Services), a California corporation which is the general partner in Stone Group; Equilease Associates I Limited Partnership (Equilease), a Connecticut limited partnership; Equilease General Corporation (Equilease General), a Connecticut corporation which is the general partner in Equilease; Communigraphics, Inc., a New Jersey corporation; and John R. Wilkins, a resident of New Jersey who is the president of Communigraphics. The Stone Group and Stone Services failed to respond and a default order was entered against them. The other defendants moved to dismiss the complaint as to them on the ground that the court lacked *in personam* jurisdiction over them and that Poole & Kent was bound by contract to litigate in New York the issues raised in its complaint. The court granted the motions to dismiss, on the basis of lack of jurisdiction, and entered final judgment in favor of Equilease, Equilease General, Communigraphics, and Wilkins, the appellees herein.

Appealing from that judgment, Poole & Kent raises the following issues:

I. Did the acts of Wilkins and Communigraphics, Inc., render them subject to personal jurisdiction under subsections (b)(1) and (b)(3) of Maryland's long arm statute?

II. Did the circuit court apply the wrong standard of proof to appellant's conspiracy theory of jurisdiction under subsection (b)(3) of the long arm statute?

III. Are appellees subject to jurisdiction under subsection (b)(1) for transacting business in Maryland through an instate agent?

IV. Does Maryland have personal jurisdiction over Equilease and Equilease General under subsection (b)(4) of the long arm statute?

We answer the first, third and fourth questions in the negative. We need not fully consider the issues presented in the second question because the court found, and we concur, that Poole & Kent Co. failed to demonstrate personal jurisdiction over appellees under any standard of proof.

### *Facts*

On 13 September 1982, Stone Services mailed to appellant, at appellant's request, a brochure prepared by Stone Group entitled "A Capital Formation Strategy for the Eighties." In that booklet, Stone Group explained the benefits of leveraged lease transactions and its role in marketing them. The booklet identified the president of Stone Services as being a former executive of "Equilease Corp." who had devoted the last twelve years to structuring leveraged lease transactions with "Equilease" and another company.

Equilease is engaged in the business of purchasing, leasing and selling computer equipment. Some time prior to 23 September 1982, it acquired certain computer equipment which it then leased to various businesses, all of which are located outside the state of Maryland. On 23 September 1982, Equilease, by and through its general partner, Equilease General, sold the computer equipment to Stone Group for $5,506,598.00, taking back a lease on the equipment, with an assignment of the right to receive all rent from the equipment's users.

The following day (24 September 1982) representatives of Stone Group met with Poole & Kent Co. officials in Maryland to negotiate the sale and purchase of the above-described equipment. Poole & Kent Co. was supplied by telex with an appraisal, addressed to the Stone Group, of the

computer equipment. The appraisal had been prepared for Stone Group by Wilkins, as president of Communigraphics, which is engaged in the business of providing appraisal services and acting as a broker-dealer of computers. Because the key paragraph of the appraisal, in which Wilkins rendered his opinion as to the total value of the equipment, was garbled in the telex transmission, Ms. Lawler, a secretary employed by Poole & Kent's attorneys, telephoned Wilkins and requested him to read the illegible paragraph.[1] The appraisal valued the equipment at $5,506,598.00, the sum paid by Stone Group on the previous day to purchase the equipment from Equilease. Poole & Kent bought the equipment for the appraised value, subject to the lease held by Equilease Associates.

Three years later, on 23 September 1985, Poole & Kent filed this action, charging Stone Group, Stone Services, Equilease, Equilease General, Communigraphics, and Wilkins with fraud, negligent misrepresentation and violation of securities laws. Appellant alleged that it discovered in January 1985 that the computer equipment it had purchased from Stone Group was worth between one million dollars and three million dollars less than its appraised value at the time of sale, that each defendant knew Poole & Kent would be the ultimate purchaser, and that they acted in concert with the intent that Poole & Kent would rely on the erroneous appraisal. Attached to the complaint were the purchase agreement between Stone Group and appellant; the purchase agreement between Equilease and Stone Group; subordination agreements between Stone Group, Equilease, several lending institutions and appellant; fi-

---

1. By affidavit, Wilkins asserted neither he nor Communigraphics, Inc. telexed the subject appraisal or consented to its transmission. He denied that he or his company has telex capability. He swore that he mailed the appraisal to Stone Group at its California mailing address under a cover letter dated "September, 1982." Wilkins maintained that he has no recollection of a phone conversation with a secretary employed by Poole & Kent's counsel, but insisted that if such conversation occurred it had to have originated with the secretary, not himself.

nancing statements; and the allegedly false or erroneous appraisal.

In support of their motions to dismiss, under Md. Rule 2–322(a), for lack of personal jurisdiction, Equilease and Equilease General submitted a detailed schedule of income indicating that from all its operations it receives $470 in monthly rent from Maryland sources (out of $1,171,877 from all sources) and no Maryland sales income. Communigraphics and Wilkins submitted with their motion to dismiss the affidavit of Mr. Wilkins to the effect that neither he nor the company had ever transacted any business in Maryland.

Poole & Kent responded with a memorandum in opposition to dismissal and several attachments thereto including: the affidavit of the company's vice president to the effect that Equilease had mailed five letters and six rent checks to Poole & Kent in Maryland; a copy of the purchase agreement between Poole & Kent and Stone Group; the booklet entitled "A Capital Formation Strategy for the Eighties" prepared by Stone Group; a copy of the partially illegible cover letter to Wilkins's appraisal that had been telexed to Poole & Kent; an affidavit of Jane Lawler, a secretary working for appellant's counsel in Baltimore, in which she declared that she spoke by telephone on 24 September 1982 with a person who identified himself as John Wilkins and who read to her the text of the illegible portion of the appraisal telex; and a file memorandum purportedly prepared by Lawler as a result of that phone conversation with Wilkins.

Equilease responded with its own reply memorandum and an affidavit from the vice president of Equilease General to the effect that Stone Group was not and had never been an agent of Equilease; that Equilease had neither seen nor authorized the Stone Group booklet; that Stone Group's president (Wayne Curry) had never been an employee of Equilease; that neither Equilease nor Equilease General was engaged in a conspiracy, agency or concerted action with any of the other named defendants.

Communigraphics and Wilkins also filed a reply memorandum and attached thereto an affidavit in which Wilkins declared that Communigraphics was asked by Stone Group to appraise computer equipment in September 1982, and that he did so based upon documents supplied by Stone Group. Moreover, Wilkins declared that the appraisal was mailed to Stone Group in California; that neither he nor Communigraphics telexed that appraisal to Maryland; that they lack telex capability; and that he recalls no conversation with Ms. Lawler.

A hearing on the motions was conducted on 26 February 1986 at which time, according to Poole & Kent's counsel, the court denied his oral motion to permit Poole & Kent to file interrogatories related to the issue of jurisdiction. No reporter was present at that hearing, and no such motion is in the record. Moreover, the record is devoid of any indication that either party filed interrogatories or otherwise attempted to conduct discovery during the five month period between the commencement of the action and the hearing on motions to dismiss.

Judge Elsbeth Bothe, by written opinion, granted the motion to dismiss for lack of personal jurisdiction over the non-defaulting defendants on the basis that they do not come within the purview of Maryland's long arm statute, Cts. & Jud.Proc.Code Ann. § 6–103.

I

Appellant analogizes Wilkins and Communigraphics to a manufacturer of a defective product. By providing the appraisal to the Stone Group, appellant contends, Wilkins and Communigraphics utilized a middleman to distribute their defective product in Maryland and thus may be rightly viewed as having transacted business in Maryland or otherwise having qualified under subsections (b)(1) and (b)(3) of

Maryland's long arm statute.[2]    Accepting appellees' analogy for argument's sake, we reach a different conclusion.

■  We do not dispute the general proposition that a "manufacturer whose products pass through the hands of one or more middlemen before reaching their ultimate users cannot disclaim responsibility for the total distribution pattern of the products." *Lamprecht v. Piper Aircraft Co.,* 262 Md. 126, 131, 277 A.2d 272 (1971) (quoting *Buckeye Boiler Co. v. Superior Court,* 71 Cal.2d 893, 80 Cal.Rptr. 113, 120, 458 P.2d 57, 64 (1969)).  That proposition, however, is qualified by the requirements of constitutional due process.  In order to meet constitutional muster it must be shown that the manufacturer sold its products with the knowledge or reasonable anticipation that they would ultimately be resold in the forum state.  *See Lamprecht v. Piper Aircraft Co.,* 262 Md. at 131, 277 A.2d 272.  *Cf. World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).  *But see Asahi Metal Industry Co. v. Superior Court,* — U.S. ——, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).[3]  No such showing was made in the case *sub judice.*

---

**2.**  (b) *In general.*—A court may exercise personal jurisdiction over a person who directly or by an agent:
    (1) Transacts any business or performs any character of work or service in the State; ...
    (3) Causes tortious injury in the State by any act or omission in the State;  Md.Cts. & Jud.Proc.Code Ann. § 6–103(b)(1), (b)(3).

**3.**  In *Asahi,* a plurality of four justices held that *in personam* jurisdiction over the manufacturer of a product is not established by demonstrating that the manufacturer was aware that its product "may or will" be sold within the forum state.  *Id.* — U.S. at ——, 107 S.Ct. at 1033.  The plurality stated that in order to support *in personam* jurisdiction, the manufacturer must have performed some act purposefully directed at the forum state beyond that of merely placing a product in the stream of commerce.  As examples of such additional acts the Court cited: (1) designing the product for the forum state's market; (2) advertising in the forum state; (3) establishing channels for providing regular advice to forum state customers; or (4) marketing through a distributor who has agreed to act as the manufacturer's sole agent within the forum state.  *Id.*

■ Wilkins provided the court below with an uncontested affidavit to the effect that, at the time of performing the appraisal, neither he nor Communigraphics had any knowledge that a Maryland person or entity was involved with the equipment being appraised. There is nothing in the record that would permit the court to infer such knowledge on the part of these appellees. The appraisal was sought by a California entity and was based on information provided by that entity. Moreover, none of the equipment was located in Maryland. Therefore, there is no basis for an inference that appellees had any reason to anticipate that their appraisal would eventually find its way into Maryland.

It appears from the record that the only direct link between Maryland and either of the appellees is the alleged telephone conversation occasioned by the garbled transmission of the subject appraisal. Appellant alleges that Wilkins, from his office in New Jersey, read the unintelligible portion of the appraisal to a secretary working for appellant's counsel in Baltimore. Wilkins, by affidavit, disavowed any recollection of that conversation and affirmatively stated that neither he nor Communigraphics possesses telex capabilities and that neither had transmitted or authorized the transmission of the appraisal into Maryland. Appellant provided no evidence to the contrary.

■ We reject the contention that the circuit court may exercise personal jurisdiction over any of the appellees on the basis of that alleged telephone conversation. We think it is preposterous to suggest that Wilkins purposefully availed himself of the privilege of conducting activities in Maryland by clarifying a garbled telex transmission which he did not originate. *Cf. Chung v. NANA Development Corp.*, 783 F.2d 1124, 1127 (4th Cir.1986) (the contacts considered are "those actually generated by the defendant"). Accordingly, the direct actions of Wilkins and Communigraphics provide no basis for jurisdiction under subsections (b)(1) or (b)(3) of the long arm statute.

## II

Appellant contends that when a jurisdictional fact is dispositive of the ultimate issue of liability, courts require the plaintiff to provide only a threshold showing of jurisdiction over the defendants. *See e.g., McLaughlin v. Copeland,* 435 F.Supp. 513, 530 (D.Md.1977). The court below, appellant argues, erroneously failed to employ that standard of proof and imposed the burden upon appellant to establish personal jurisdiction over appellees by a preponderance of the evidence. In actuality, however, the court found that appellant failed to prove jurisdiction by *any* standard of proof. Because we agree with that assessment, we need not consider the threshold issue that is implicit in appellant's argument: whether Maryland recognizes the conspiracy theory of jurisdiction. *Compare I.S. Joseph Co. v. Mannesmann Pipe & Steel Corp.,* 408 F.Supp. 1023, 1024 (D.Minn.1976) (rejecting the conspiracy theory of jurisdiction).

The only evidence of conspiracy offered by appellant consists of a marketing booklet sent by Stone Services to appellant in which Stone Group described leveraged lease transactions and its role in organizing such transactions, the purchase and leaseback agreements between Equilease and Stone Group, the purchase agreement between Stone Group and appellant, and certain subordination agreements. None of those documents on its face gives rise to an inference of conspiracy; rather, they appear in all respects to evidence no more than two consecutive arm's length transactions.

■ Appellant argues that because there was such a great discrepancy between the price it paid for the equipment and the actual value, and because all of the defendants were sufficiently knowledgeable about the value of such equipment that they must have known the appraisal was grossly inflated, there is an inference that all of the defendants conspired to defraud appellant. That argument, however, is fatally flawed. In the first place, appellant

concedes that it computes the value of the equipment on the basis of replacement cost, whereas the appraisal was of equipment under lease at sufficient rental to recoup the allegedly inflated price. Secondly, as appellant also concedes, what was sold to it was a tax shelter, so that the value of the equipment was subordinate to the tax benefits, which were expected to be in direct proportion to the appraisal value. Such being the case, an inflated evaluation does not give rise to an inference of conspiracy to defraud appellant, but, rather, of a mutually acceptable figure designed to produce a maximum tax benefit—provided the Internal Revenue Service would allow it. As counsel for appellant admitted during oral argument, appellant was perfectly happy about the price until the I.R.S. questioned the deal.

■ Appellant's next contention is that if the court had permitted it to engage in discovery it would have been able to substantiate its allegations of conspiracy. But the court did nothing to prevent appellant from conducting discovery. Under Md. Rule 2–421, appellant could have submitted interrogatories with the filing of its complaint or any time thereafter. There were other methods of discovery that were available but unused. The blunt fact of the matter is that appellant, although fully aware of the jurisdictional problem, failed to avail itself of the discovery procedures it now contends could have added flesh to the bare bones of its allegations of conspiracy. What appellant actually complains of was not a refusal by the court to permit discovery, but a denial of an oral request for a delay in ruling on appellees' motions in order to extend the time for discovery. That, of course, was a matter entirely within the court's discretion, and, in view of appellant's total inactivity prior to the hearing on the dismissal motions, we are not persuaded that the court abused its discretion.

### III

Appellant alleges that Stone Group was appellees' agent for transacting business in Maryland, thus appellees are

amenable to jurisdiction under subsection (b)(1) of the long arm statute. Suffice it to say that appellant has provided even less evidence of agency than of conspiracy. We reject that contention as meritless.

## IV

Section 6–103(b)(4) provides that a court may exercise personal jurisdiction over a person who:

Causes tortious injury in the State or outside the State by an act or omission outside the State if he regularly does or solicits. business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State; . . . .

Md.Cts. & Jud.Proc.Code Ann. § 6–103(b)(4). Appellant argues that Equilease and Equilease General are amenable to jurisdiction in Maryland under that provision of Maryland's long arm statute. We reject that argument.

■ The provisions of Maryland's long arm statute are subject to the limitations of constitutional due process. *Mohamed v. Michael,* 279 Md. 653, 657, 370 A.2d 551 (1977). Recently, the Court of Appeals has analyzed the development of the notion of due process and its limitations upon Maryland's long arm statute. *See Camelback Ski Corp. v. Behning,* 307 Md. 270, 274, 513 A.2d 874 (1986), *vacated,* 480 U.S. ——, 107 S.Ct. 1341, 94 L.Ed.2d 512 (1987).[4] We distill from that opinion, and Supreme Court precedent, three principles of particular importance in the case *sub judice.*

1.  The defendant must have certain minimum contacts with Maryland such that maintenance of the suit does not offend "traditional notions of fair play and sub-

---

**4.** The Supreme Court vacated *Camelback* and remanded the matter for reconsideration in light of *Asahi Metal Industry Co. v. Superior Court, supra, Behning v. Camelback Ski Corp.,* —— U.S. ——, 107 S.Ct. 1341, 94 L.Ed.2d 512 (1987), apparently because *Asahi* recognizes advertising in the forum state as an important contact factor.

stantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945);

2. It is essential that there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958);

3. When a claim does not arise out of or does not relate to the defendant's contacts with the forum state, those contacts must be fairly extensive before personal jurisdiction will be imposed without violating due process. *Camelback Ski Corp. v. Behning,* 307 Md. at 279–80, 513 A.2d 874.

Applying those principles to the case before us, it is clear that the minimal contacts between Maryland and each of the appellees are not sufficient to support an assertion of personal jurisdiction as to any of them.

■ The only contacts between Equilease and Maryland consist of six rent checks and five letters mailed by Equilease to appellant and four lease agreements between Equilease and Maryland entities other than appellant. The rent was paid pursuant to a lease agreement that was transacted in New York between Stone Group and Equilease and later assigned by Stone Group to Poole & Kent. Despite appellant's protestations to the contrary, the payment of rent under those circumstances can hardly be characterized as purposeful availment of the privilege of conducting business in Maryland. *Cf. Hanson v. Denckla, supra.*

Focusing our attention on the four lease agreements between Equilease and certain Maryland companies that are not parties to this suit, we note that those leases generate monthly income of only $470.00, which amounts to less than 4/100ths of 1% of the total monthly rental income generated by Equilease from all localities. Those Maryland leases do not represent a sufficiently extensive relationship be-

tween Equilease and Maryland to support an exercise of personal jurisdiction over appellees concerning a matter totally unrelated to those leases.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.