**Jennifer Lynn GIMER, Plaintiff,**

v.

**E. Darrell JERVEY, III, Defendant.**

**Civ. A. No. 89–0480–R/C.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

Nov. 19, 1990.

Axel Kleiboemer, Richard A. Ifft, Hopkins, Sutter, Mael & Park, Washington, D.C., for plaintiff.

Jane P. Long, John W. Zunka, Taylor & Zunka, Ltd., Charlottesville, Va., for Hartling.

Matthew B. Murray, Richmond & Fishburne, Charlottesville, Va., for plaintiff.

James W. Jennings, Jr., Frank K. Friedman, Woods, Rogers & Hazlegrove, Roanoke, Va., for Jervey.

## MEMORANDUM OPINION

MICHAEL, District Judge.

The matter presently before the Court is the motion for summary judgment filed in this case by defendant E. Darrell Jervey, III, on April 30, 1990. Thereafter, all concerned parties filed supporting and opposing legal memoranda on the motion, and on August 16, 1990, the Court heard oral argument on the motion. The matter is, therefore, ripe for resolution.

Before turning to the body of the Memorandum Opinion, however, the Court would like to comment on the quality of the oral and written advocacy displayed by counsel in this case. Without exception, the attorneys in this case have done an admirable job of fully representing their clients' positions. They have displayed a masterful command of the case law, and they have skillfully maneuvered in a complicated area of the law. Even more importantly from the Court's position, counsel has done an excellent job of narrowing the issues involved in the case and correctly focusing the Court's attention on only the vital issues. If every court had such skillful and professional practitioners before it daily as officers of the court, the judicial system in this country would operate much more effectively.

Due to the quality of the advocacy in this case, the Court has a great deal of remorse about announcing the result that is mandated, but putting aside such selfish desires, the Court believes, as the following pages will reveal more fully, that the relevant statutes and case law require this Court to grant defendant Jervey's motion for summary judgment and to strike this case from the docket of the Court.

### Factual Background

The plaintiff, Jennifer Lynn Gimer, was injured on the afternoon of April 11, 1986, when the automobile in which she was a passenger was involved in an accident on a secondary highway in the vicinity of Char-lottesville, Virginia. At the time of the accident, the automobile was owned and driven by the defendant, E. Darrell Jervey, III.[1] Although there is considerable disagreement concerning the cause of the accident, the parties agree that on the afternoon in question the automobile skidded, overturned and ultimately came into contact with a second automobile being driven by Michael G. Hartling, formerly a party to this lawsuit.

On the eve of the third anniversary of this accident, the plaintiff filed suit against defendants Jervey and Hartling in the United States District Court for the District of Maryland. In her complaint, the plaintiff alleged negligence upon the part of both defendants. Specifically, she alleged that both defendants were operating their vehicles at excessive speed and failed to maintain proper control over their vehicles. In response, the defendants denied the plaintiff's allegations and filed motions to dismiss the case for lack of personal jurisdiction and, alternatively, motions to transfer the case for improper venue. The plaintiff opposed the motions to dismiss, but acquiesced in the motions to transfer the case for improper venue. On May 16, 1989, the United States District Court for the District of Maryland ordered the transfer of the case to this Court.

The action presently before the Court concerns a motion for summary judgment filed by defendant Jervey against the plaintiff on statute-of-limitations grounds. Formerly, defendant Hartling also had pending with the Court his own motion for summary judgment, the substance of which was similar to defendant Jervey's motion. According to the defendants, the federal district court located in the State of Maryland where the case was originally brought (sometimes referred to hereinafter as the "Maryland Court") never had personal jurisdiction over either of the defendants. Hence, the defendants argued that this Court is bound by United States Supreme

---

1. During oral argument on defendant Jervey's motion for summary judgment, it was disclosed to the Court that the plaintiff and defendant Jervey had been engaged for a period of time preceding the filing of this lawsuit. Apparently, as evinced by the present proceedings, that relationship has soured.

Court precedent to apply the relevant Virginia statute of limitations, which is two years, instead of the relevant Maryland statute of limitations, which is three years, and that the Court should consequently bar the plaintiff from further prosecuting this lawsuit.

On July 13, 1990, the plaintiff agreed that the Maryland Court never had personal jurisdiction over defendant Hartling; therefore, an endorsed order was entered on that date dismissing defendant Hartling as a party to the action on the grounds that suit against him was barred by the statute of limitations. The plaintiff remained convinced, however, that the Maryland Court did have personal jurisdiction over defendant Jervey and, as a result, that Maryland's relevant statute of limitations, not Virginia's, should be applied in this case. Both the plaintiff and defendant Jervey have submitted exhaustive legal memoranda on the question, and the Court heard oral argument on August 16, 1990. Therefore, this matter is ripe for resolution.

*Legal Analysis*

I.

■ The parties, during oral argument and in the legal memoranda that they have filed, have considerably narrowed the issues that are before the Court for resolution. Both parties agree that the doctrine that controls the resolution of the statute-of-limitations question has been announced by the United States Supreme Court in a line of cases beginning with *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Both parties agree that, according to this doctrine, a federal court in a diversity case must generally apply the state law—including the given state's statute of limitations—that would be applied by a court of the state in which it sits. *See id.* Likewise, both parties agree that, when a defendant initiates a transfer of a case filed against him under 28 U.S.C. § 1404(a) (1976), the transferee court is bound by the United States Supreme Court's holding in *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), to apply the same state law that the transferor court would have

applied. Furthermore, both parties agree that an exception to the *Van Dusen* holding exists where the transferor court lacks personal jurisdiction over the defendant, and therefore, the transferee court is obligated to apply the laws of the state in which it sits, rather than those of the state of the transferor court. *See Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1110 (5th Cir.1981) ("[F]ollowing a § 1404(a) transfer from a district in which personal jurisdiction over the defendant could not be obtained, the transferee court must apply the choice of law rules of the state in which it sits."); *Gonzalez v. Volvo of America Corp.*, 734 F.2d 1221 (7th Cir.1984); *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982 (11th Cir.1982); *cf. Lavay Corp. v. Dominion Fed. Sav. & Loan Assn.*, 830 F.2d 522, 526 (4th Cir.1987) (holding that, when a mandatory transfer is ordered pursuant to 28 U.S.C. § 1406(a) for improper venue, the transferee district court must apply the law of the state in which it is held rather than the law of the state of the transferor district court in order to prevent forum-shopping). Finally, applying the *Klaxon/Van Dusen/Ellis* doctrine to the facts of the present case, the parties agree that the resolution of the statute-of-limitations question hinges upon whether or not the United States District Court for the District of Maryland in which this case was initially brought had personal jurisdiction over defendant Jervey. In other words, the parties agree that, if the Maryland court did have personal jurisdiction over defendant Jervey, then the present lawsuit is not barred by the statute of limitations and summary judgment would be inappropriate. Conversely, the parties also agree that, if the Maryland Court did not have personal jurisdiction over defendant Jervey, then the present action is barred by the statute of limitations and summary judgment should be entered by the Court. Accordingly, the Court's task pursuant to defendant Jervey's motion for summary judgment is to determine whether or not the United States District Court for the District of Maryland in which this case was

initially brought had personal jurisdiction over defendant Jervey, and once this task is completed, the resolution of statute-of-limitations question is automatic.

## II.

The Fourth Circuit Court of Appeals has stated that, when evaluating whether or not personal jurisdiction can be obtained over a defendant pursuant to a state's long-arm statute, a "two-step analysis" should be applied. *See English & Smith v. Metzger*, 901 F.2d 36 (4th Cir.1990); *Peanut Corp. of America v. Hollywood Brands, Inc.*, 696 F.2d 311 (4th Cir.1982). The reviewing court must first determine whether the statutory language of the relevant long-arm statute applies to the defendant in question, and if it does, the court must then determine whether the statutory assertion of jurisdiction is consistent with the Due Process Clause of the Constitution. *See English & Smith*, 901 F.2d at 38. As the following pages will demonstrate, when this analysis is applied to the facts of the present case, neither prong of the Fourth Circuit test would have allowed personal jurisdiction over defendant Jervey to be obtained by the United States District Court for the District of Maryland in which this case was initially brought.

## A.

■ The long-arm statute of the State of Maryland states, in pertinent part, that:

A court may exercise personal jurisdiction over a person, who directly or by an agent[,] ... causes tortious injury in the State or outside the State by an act or omission outside the State if he *regularly* does or solicits business ... [or] ... engages in any other *persistent* course of conduct in the State[.]

**2.** There was considerable disagreement between the parties concerning the extent of the "odd jobs" performed by defendant Jervey for the plaintiff's father and whether or not he was actually compensated for his efforts. For the purpose of resolving this motion, counsel for the plaintiff was willing to concede that these "odd jobs" were not extensive and that there were only small amounts of money involved.

Md.Code Courts and Judicial Proceedings, § 6–103(b)(4) (1990) (emphasis added). Clearly, by using such terms as "regularly" and "persistent," the Maryland legislature intended that, before a court sitting within the State could obtain personal jurisdiction over a non-resident defendant, the defendant would have to engage in more than isolated actions within the State. Indeed, synonyms most commonly associated with "regularly" include, *inter alia*, "habitually" and "periodically," and synonyms most commonly associated with "persistent" include, *inter alia*, "uninterrupted," "continuous" and "unremitting."

In the present case, defendant Jervey's only contacts with the State of Maryland are: (1) that he was previously employed, well before the present litigation began, by a company within the State for approximately one year; (2) that he previously volunteered as a counsellor at a camp located within the State for a short period of time; (3) that he has travelled through the State in his automobile on numerous occasions; and (4) that he previously performed "odd-jobs" within the State for the plaintiff's father and was compensated for his efforts.[2] Although a close call, these contacts do not constitute the regular or persistent course of conduct within the State of Maryland that is required by the long-arm statute before personal jurisdiction could be obtained over defendant Jervey.

This conclusion is supported by the holdings of the Maryland Court of Appeals in *Camelback Ski Corp. v. Behning*, 312 Md. 330, 539 A.2d 1107 (1988), *Poole & Kent Co. v. Equilease Assocs.*, 71 Md.App. 9, 523 A.2d 1018 (1987), and *Lewron Television, Inc. v. International Alliance of Theatrical Stage Employees and Moving Picture Mach. Operators of the United States and Canada*, 37 Md.App. 662, 378 A.2d 728 (1977).[3] In all of these cases, the Maryland

**3.** At oral argument, counsel for the plaintiff attempted to distinguish these three Maryland cases from the facts of the present case by explaining that, in all three cases, the defendants "could not help" having contacts with the State of Maryland. For example, counsel for the plaintiff argued that, in the *Camelback* case, the defendant purchased a toll-free telephone number by which interested customers could

Court of Appeals concluded that *"when a claim does not arise out of or does not relate to the defendant's contacts with the forum state, those contacts must be fairly extensive before personal jurisdiction will be imposed[.]" Poole*, 523 A.2d at 1022 (emphasis added). Therefore, on the basis of the technical requirements of Maryland's long-arm statute alone, the United States District Court for the District of Maryland could not have had personal jurisdiction over defendant Jervey based upon the facts of the present case.[4]

The plaintiff principally relies on *Carter v. Massey*, 436 F.Supp. 29 (D.Md.1977), for her position that the Maryland Court did have personal jurisdiction over defendant Jervey based upon the State's long-arm statute. In the *Carter* case, an automobile accident occurred in Delaware. *See id.* at 30. The plaintiffs, residents of Maryland, brought suit against several Delaware residents, and the federal district court sitting in Maryland where the case was brought concluded that it had personal jurisdiction over the defendants. *See id.* The *Carter* case is, however, distinguishable from the present case due to the extensive contacts that the *Carter* defendants had with the State of Maryland. Unlike the present case, the defendants in the *Carter* case, with great frequency and often several times weekly, travelled to Maryland for business reasons. Accordingly, the Court views the pertinent facts of the present case as resembling more closely the facts of the *Poole, Camelback* and *Lewron* cases than the facts of the *Carter* case, and for this reason, the United States District Court for the District of Maryland in which this case was originally filed could never have obtained personal jurisdiction over defendant Jervey based upon the long-arm statute of the State of Maryland.

### B.

■ Assuming *arguendo* that personal jurisdiction could have been obtained over defendant Jervey pursuant to Maryland's long-arm statute, defendant Jervey's contacts with the State of Maryland are, nevertheless, insufficient on a substantive, constitutional level to give a court sitting in that State personal jurisdiction over him. The United States Supreme Court has held that the Due Process Clause of the Fourteenth Amendment permits personal jurisdiction over a defendant in any state with which the defendant has "certain *minimum* contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Calder v. Jones*, 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1983) (quoting *International Shoe Co. v. Wash-*

---

make reservations and otherwise obtain information regarding its ski resort. Counsel for the plaintiff observed that, in the *Camelback* case, the defendant could, in no way, exclude interested parties in the State of Maryland from taking advantage of the toll-free telephone number. Put another way, counsel for the plaintiff argued that the *Camelback* defendant by purchasing a nation-wide toll-free telephone number could not prohibit Maryland residents from calling the number. From this example, counsel for the plaintiff concluded that it would "offend traditional notions of fair play" to allow personal jurisdiction to be obtained by a Maryland state court in that case when the defendant "could not help his contacts with the state." Also from this example, counsel for the plaintiff concluded that, had the defendant in the *Camelback* case done anything to purposely avail himself of business opportunities within the State of Maryland, then the result would have been different: the defendant in the *Camelback* case would have been personally amenable to suit in courts sitting within the State.

The Court was impressed by the novelty of this argument, but upon closer review of the three Maryland cases upon which the argument is based, the Court found that the defendants involved did take active, not just passive, steps to engage in isolated activities within the State of Maryland that were unrelated to the subject matter of the lawsuits. Therefore, the plaintiff's argument does not accurately reflect the interpretation that the Maryland Court of Appeals has given to its State's long-arm statute. Contrary to the plaintiff's argument, a defendant can engage in some minimal activities within the State of Maryland without personally subjecting himself to suit for an unrelated tort occurring outside the State.

4. Courts in other Circuits have reached similar conclusions on fact patterns closely analogous to the present case. *See Saylor v. Dyniewski*, 836 F.2d 341 (7th Cir.1988); *Subacz v. Town Tower Motel Corp.*, 567 F.Supp. 1308 (N.D.Ind. 1983).

*ington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).[5] The Supreme Court has also stated that there must be "a sufficient connection between the defendant and the forum state to make it fair to require defense of the action in the forum," and that "an essential criterion in all cases is whether the quality and nature of the defendant's activity is such that it is reasonable and fair to require him to conduct his defense in that State." *Kulko v. California Superior Court,* 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1977).

Along these lines, numerous courts, *see Federal Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654, 660 (4th Cir.1989), including the United States Supreme Court, *see Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1983), have recognized a distinction between "general" and "specific" personal jurisdiction. As Judge Wilson of the United States District Court for the Western District of Virginia has correctly observed, "general" personal jurisdiction is the "exercise of personal jurisdiction over a defendant in action [like the present lawsuit] which does not arise out of a defendant's contact with the forum." *Sowards v. Switch Energy Co., Inc.,* 744 F.Supp. 1399, 1402 (W.D.Va.1990). To satisfy this due process standard, a defendant's contacts with the forum must be "continuous and systematic." *Id.; see Perkins v. Benquet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). By contrast, "specific" personal jurisdiction, as correctly noted by Judge Wilson, concerns the exercise of personal jurisdiction over a defendant in an action (unlike the present lawsuit) which arises out of a defendant's contacts with the forum. *See Sowards,* at 1402. To meet this standard, "a defendant must direct his ... activities at the forum." *Id.* In the present case, defendant Jervey's contacts with the State of Maryland have been few and haphazard, and although there is no "black and white," *Kulko,* 436 U.S. at 90, 98 S.Ct. at 1695–96, in this area, they are not sufficient under the Due Process Clause to confer upon courts situated in the State of Maryland the power to obtain "general" personal jurisdiction over defendant Jervey as is required by the facts of the present case.[6]

---

5. One of the plaintiff's strongest arguments in support of her position that the Maryland Court did have personal jurisdiction over defendant Jervey is that the Due Process Clause only requires certain "minimum" contacts. Focusing on the word "minimum," the plaintiff maintains that defendant Jervey did have some contacts with Maryland and that these "minimum" contacts should satisfy due process requirements. What the plaintiff fails to realize is that the word "minimum" cannot be read in a vacuum; rather, it is contextual: "Did the defendant have contacts with the State that are minimally required for that State to obtain personal jurisdiction over him in this particular type of lawsuit?" Hence, in some cases, in order to subject a defendant personally to the jurisdiction of a state's courts, the defendant must abstractly have had a great deal of contact with the state; conversely, in other cases, the defendant must abstractly have had only a small amount of contact with the state. As following paragraphs in the main text of this Memorandum Opinion reveal, the degree of contact with the forum state that is required in order to subject a defendant personally to the jurisdiction of the state's courts usually hinges upon whether the court in the forum state is attempting to obtain "general" or "specific" personal jurisdiction over the defendant.

6. The plaintiff argues that, in determining whether or not personal jurisdiction is proper under the Due Process Clause, the interests of all parties—plaintiff, defendant, state, etc.—must be balanced. Along these lines, the plaintiff concludes that the infrequency and inadequacy of defendant Jervey's contacts with the State of Maryland is more than outweighed by the State's strong interest in seeing that its citizens are compensated for torts committed against them and in seeing that it is not forced to provide financially for any of its citizens that are entitled to private compensation. What the plaintiff fails to realize is that Virginia also has a strong interest in seeing lawsuits like the present case litigated in forums within its boundaries, namely the desire to insure the *timely* and effective enforcement of its traffic laws. Furthermore, the plaintiff forgets that one of the principal explanations for the requirement that a court obtain personal jurisdiction before adjudicating the rights of defendants is that this country's justice system is founded on the idea of interstate federalism—the idea that the forum with the most compelling interest should be allowed to conduct the litigation to insure the orderly administration of justice. *See Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 290, 100 S.Ct. 559, 563–64, 62 L.Ed.2d 490 (1986).

In conclusion, based upon either the technical requirements of the State of Maryland's long-arm statute or upon the substantive requirements of the Due Process Clause, the United States District Court for the District of Maryland in which this suit was originally filed did not have personal jurisdiction over defendant Jervey. Quite simply, defendant Jervey engaged in no "regular" or "persistent" course of conduct in the State of Maryland that is a prerequisite to a court, sitting within the State, obtaining personal jurisdiction over any defendant. Similarly, on a substantive level, defendant Jervey's contacts with the State of Maryland were not sufficient to satisfy the requirements of the Due Process Clause to confer upon a Maryland court "general" personal jurisdiction over him. Therefore, the Court is not bound to follow the relevant Maryland statute of limitations in this case, but should instead follow the relevant Virginia statute of limitations. As a result, since the relevant Virginia statute of limitations for personal-injury suits is two years and the accident in question occurred almost three years before the plaintiff filed suit in this case, the plaintiff is barred from further prosecuting the case on statute-of-limitations grounds, and summary judgment must be granted in favor of defendant Jervey.

### Conclusion

For the above-stated reasons, defendant Jervey's motion for summary judgment must be granted.

An appropriate Order shall this day issue.