948 F.2d 1280
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Jennifer Lynn GIMER, Plaintiff-Appellant,
v.
E. Darrell JERVEY, III, Defendant-Appellee.
 No. 90-2515.
 United States Court of Appeals, Fourth Circuit.
 Argued May 7, 1991.
Decided Nov. 18, 1991.
 
 1
 Appeal from the United States District Court for the Western District of Virginia, at Charlottesville. James H. Michael, Jr., District Judge. (CA-89-480-R-C)
 
 
 2
 Argued: Richard Alan Ifft, Hopkins & Sutter, Washington, D.C., for appellant; Frank Kenneth Friedman, Woods, Rogers & Hazelgrove, Roanoke, Va., for appellee.
 
 
 3
 On Brief: Axel Kleiboemer, Law Offices of Axel Kleiboemer, Washington, D.C., for appellant; James W. Jennings, Jr., Woods, Rogers & Hazelgrove, Roanoke, Va., for appellee.
 
 
 4
 W.D.Va., 751 F.Supp. 570.
 
 
 5
 AFFIRMED.
 
 
 6
 Before ERVIN, Chief Judge, ROBERT J. STAKER, United States District Judge for the Southern District of West Virginia, sitting by designation, and FRANK A. KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 
 OPINION
 ROBERT J. STAKER, District Judge:
 
 7
 The issue before this court is whether the contacts of defendantappellee E. Darrell Jervey, III (hereinafter, Jervey) with the State of Maryland were sufficient to allow its courts to assert "long-arm" personal jurisdiction over him. The district court found that they were not. Gimer v. Jervey, 751 F.Supp. 570 (W.D.Va.1990). We affirm.
 
 Background
 
 8
 This lawsuit is based upon an automobile accident which occurred on April 11, 1986, near Charlottesville, Virginia. The plaintiffappellant Jennifer Gimer (hereinafter, Gimer) was a passenger in a car which was being driven by Jervey. Both of the parties were attending the University of Virginia, at Charlottesville, at the time of the accident. It is alleged, and has not been disputed, that Gimer was a citizen of the State of Maryland and Jervey was a citizen of the State of South Carolina at that and all later relevant times.
 
 
 9
 On April 10, 1989, Gimer filed suit against Jervey and the driver of another vehicle involved in the accident in the United States District Court for the District of Maryland. The defendants, including Jervey, moved to dismiss the action on the grounds that the district court lacked subject matter and personal jurisdiction over them; alternatively, they requested that the case be transferred to the Western District of Virginia, where the accident occurred. Gimer assented to transfer although she maintained that the Maryland district court had both subject matter jurisdiction over the action and personal jurisdiction over the defendants. By order of May 16, 1990, this case was transferred to the United States District Court for the Western District of Virginia.
 
 
 10
 Thereafter, Gimer agreed to the dismissal of the suit against the driver of the other vehicle, leaving only Jervey as a defendant. Jervey moved for summary judgment contending that Gimer's cause of action against him was barred because it was not brought within two years after the accident, as required by the applicable Virginia statute of limitations, Va.Code § 8.01-243 (1981 & 1991 Cum.Supp.). Gimer opposed the motion on the ground that the Maryland three year statute of limitations, Md.Cts. & Jud.Proc.Ann. § 5-101 (1989), rather than the Virginia limitations, governed and that consequently she had timely instituted her action. The district court held that Virginia's statute of limitations applied, that Gimer had not brought her action within that limitations period and thus dismissed her action against Jervey.
 
 Proceedings Below
 
 11
 Although the district court's reason for dismissing this action was that it was barred by the statute of limitations, the actual issue that was determined by that court and which is here on appeal is whether or not the Maryland district court ever had personal jurisdiction over the defendant Jervey. As the district court thoroughly explained, the question of personal jurisdiction arises because this is a diversity jurisdiction case involving a transfer from a district court in one state to a district court in another state. When such a transfer occurs, the court to which the case is transferred must apply the same law as would the court from which the case is transferred, Van Dusen v. Barrack, 376 U.S. 612 (1964), unless the transferor court did not have personal jurisdiction over the defendant. Gimer v. Jervey, 751 F.Supp. at 572 & cases cited therein. If the exception applies the transferee court will apply the law of the state in which it sits. Id. This would include that state's choice of law rules also. See Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487 (1941). In the case at bar, the parties in effect stipulated that if it were determined that the Maryland district court had personal jurisdiction over Jervey then the Maryland statute of limitations would govern this action. Otherwise, the Virginia statute of limitations was to be applied. 751 F.Supp. at 572. They have not argued to the contrary to this court.
 
 
 12
 Gimer argued that Maryland courts could properly assert personal jurisdiction over Jervey under that state's "long-arm" statute, Md.Cts. & Jud.Proc.Ann. § 6-103 (1989), particularly subsection (b)(4). The statute is as follows:
 
 
 13
 § 6-103. Cause of action arising from conduct in State or tortious injury outside State.
 
 
 14
 (a) Condition.--If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.
 
 
 15
 (b) In general.--A court may exercise personal jurisdiction over a person, who directly or by an agent:
 
 
 16
 (1) Transacts any business or performs any character of work or service in the State;
 
 
 17
 (2) Contracts to supply goods, food, services, or manufactured products in the State;
 
 
 18
 (3) Causes tortious injury in the State by an act or omission in the State;
 
 
 19
 (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services or manufactured products used or consumed in the State;
 
 
 20
 (5) Has an interest in, uses, or possesses real property in the State; or
 
 
 21
 (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.
 
 
 22
 Gimer contended that Jervey had engaged in a persistent course of conduct in Maryland so as to bring him within the statute by driving an automobile on Maryland highways on numerous occasions over a period of years, by being employed in Maryland for approximately one year and by performing "odd-jobs" in Maryland for Gimer's father and volunteering as a counselor for a camp in Maryland for a period during the summer of 1989.
 
 
 23
 The district court held that such activities did not meet the requirements of § 6-103(b)(4), as interpreted by Maryland courts. 751 F.Supp. at 573-74. Furthermore, assuming that Maryland courts would attempt to assume jurisdiction based on these facts, such assertion would violate constitutional due process. Id. at 574-76. The district court held that consequently the Maryland district court never had personal jurisdiction over Jervey. It therefore applied the Virginia, rather than Maryland, statute of limitations and determined that the action was not timely filed. Jervey's motion for summary judgment and to dismiss the action was granted.
 
 Issue on Appeal
 
 24
 Gimer does not contend in this appeal that the district court was mistaken in its determination of what facts were determinative to this case or what was the applicable law. Instead, she contends that the court came to the wrong conclusion when it applied the law to the facts. The standard of review regarding a district court's rulings of law and its granting summary judgment are the same--the review is de novo. Felty v. Graves-Humphrey Co., 818 F.2d 1126, 1127 (4th Cir.1987); Rawl v. United States, 778 F.2d 1009, 1014 (4th Cir.1985), cert. denied, 479 U.S. 814 (1986).
 
 
 25
 The determination as to whether a state's courts may exercise personal jurisdiction over a defendant who is not a resident of that state and who is not served with process in that state involves a two-step analysis. First, does the state's "long-arm" statute authorize the exercise of jurisdiction in the circumstances presented? Second, would the exercise of jurisdiction comport with constitutional due process standards? Federal Insurance Co. v. Lake Shore, Inc., 886 F.2d 654, 657 n. 2 (4th Cir.1989). However, since § 6-103 has been interpreted to allow Maryland courts to extend personal jurisdiction to the limits allowed by federal due process, e.g., Geelhoed v. Jensen, 277 Md. 220, 224, 352 A.2d 818, 821 (1976); Novack v. National Hot Rod Ass'n, 247 Md. 350, 353-54, 231 A.2d 22, 24 (1967), the two-step analysis melds into the one question of whether due process would be satisfied. Federal Insurance Co., supra.
 
 
 26
 The "long-arm" jurisdiction of § 6-103(b)(4) which Gimer is asserting in this case involves general jurisdiction because the cause of action does not arise out of Jervey's contacts with Maryland. Federal Insurance Co. at 660; see Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-15 (1984). The cause of action arose out of the accident in Virginia. Therefore, in order to satisfy due process Jervey's contacts with Maryland must be continuous and systematic. Helicopteros, 466 U.S. at 415-16; Federal Insurance Co., supra. Maryland courts apply the same standard in determining the reach of their statute. E.g., Camelback Ski Corp. v. Behning, 312 Md. 330, 338, 539 A.2d 1107, 1111 (1988), cert. denied, 488 U.S. 849 (1988); Geelhoed, 277 Md. at 232, 352 A.2d at 825.
 
 
 27
 Gimer's argument that Jervey's contacts with Maryland meet the "continuous and systematic" standard has three parts: (1) that Jervey has driven automobiles, sometimes with Gimer as a passenger therein, on Maryland's highways both before and after the 1986 accident; (2) that Jervey was employed by a company in Greenbelt, Maryland from September, 1986, through August, 1987; and (3) that during the summer of 1989 Jervey performed some "odd-jobs" for Gimer's father and was a volunteer camp counselor for one month in Maryland. She proposes that these were purposeful contacts with Maryland and as a result it would not be unfair for Jervey to have to defend this action in a Maryland court.
 
 
 28
 Gimer has not carried the burden of showing that Jervey's contacts with Maryland which occurred after this litigation was initiated rise to the level of being continuous and systematic. Therefore, those contacts by themselves will not support an assumption of jurisdiction. Nor does the fact that Jervey drove on Maryland's highways over a period of several years establish the type of continuous and systematic contacts necessary to satisfy due process. In evaluating the sufficiency of an individual's contacts for due process purposes, an important factor is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hailed into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (citations omitted). Interstate travel is ubiquitous in modern America. See id., 444 U.S. at 318 (Justice Blackmun, dissenting). A non-resident may often traverse the highways of another state. We do not think that a reasonable person would anticipate that such activity would make him subject to being hailed into the courts of that state to defend a lawsuit arising out of his conduct in another state. Surely reasonable people would consider such an assertion of jurisdiction offensive to traditional notions of fair play and justice. See Burnham v. Superior Court of California, 495 U.S. ----, ----, 110 S.Ct. ----, ----, 109 L.Ed.2d 631, 644 (1990). Therefore, Jervey's use of Maryland's highways will not support that state's jurisdiction over him in the circumstances of this case.
 
 
 29
 Jervey's employment in Maryland for almost a year, plus his daily commuting from Virginia into Maryland to perform that employment, could constitute the sort of continuous and systematic contacts necessary to satisfy due process. See Geelhoed, 277 Md. at 232, 352 A.2d at 825. The problem is that this period of employment began in September, 1986, and ended in August, 1987, approximately a year-anda-half before Gimer brought this action. Continuous and systematic contacts, once established, do not thereafter remain unchanged for all time. Events may alter a person's relationship with a forum so that his contacts with it become so attenuated as to make it unfair for that forum to exercise general "long-arm" jurisdiction over him. See Carter v. Massey, 436 F.Supp. 29, 35 (D.Md.1977). Based upon the evidence presented, we find that such is the situation in this case. Consequently, the Maryland district court did not have personal jurisdiction over the defendant Jervey prior to the transfer of the proceedings. The judgment of the district court is
 
 
 30
 AFFIRMED.
 
 KAUFMAN, Senior District Judge, dissenting:
 
 31
 In this case, filed April 10, 1989, plaintiff, a Marylander, has sued defendant, a South Carolinian, for injuries which she sustained in an accident on April 11, 1986. On that date, plaintiff was a passenger in an automobile driven by defendant, her boyfriend.
 
 
 32
 The parties attended the University of Virginia, at Charlottesville, graduating in May 1986. From September 1986 through August 1987, defendant worked in Maryland for General Motors Acceptance Corporation. During the summer of 1989, defendant served for one month as a volunteer counselor at a camp located in Maryland and also performed in Maryland certain "odd jobs," for remuneration, for plaintiff's father. On what the district court has described as "numerous occasions," defendant, beginning with his college days and continuing through the summer of 1989, after which he returned to South Carolina to attend medical school, drove his automobile within Maryland.
 
 
 33
 The single question posed in this case is whether those contacts by defendant with Maryland are sufficient to invoke application of Maryland's "long arm" statute within the confines of the constitutional and statutory requirements enunciated in the majority opinion. Opinion of Majority, at 6. While the question is a close one and there seemingly is no Maryland case precisely on point, I conclude, contrary to the majority, that defendant's contacts with Maryland are sufficient to satisfy those standards.
 
 I.
 
 34
 Some of defendant's activities in Maryland were business related, others were not. That distinction would not appear material, since Maryland's requirement of "continuous and systematic" contacts "need not be conduct of a commercial nature" where subsection b(4) of Maryland's long arm statute is concerned. Geelhoed v. Jensen, 277 Md. 220, 226, 352 A.2d 818, 822 (1976). Most of defendant's conduct in Maryland took place after the accident in April 1986, and some of it occurred after this suit was filed. Such "conduct may occur before the tortious conduct," Geelhoed, 277 Md. at 230, or after the tortious conduct, see Carter v. Massey, 436 F.Supp. 29, 35 (D.Md.1977). See also McLaughlin v. Copeland, 435 F.Supp. 513, 527 n. 9 (D.Md.1977).
 
 
 35
 Significant and regular contacts of a defendant with a forum state during the time when the suit is filed and is being conducted would appear to lessen the burden of defending a suit in that state in comparison to the burden of defending in a state where the contacts at one time (when the acts giving rise to the cause of action occurred) were great but where at the time of the filing and prosecution of the suit were nonexistent.
 
 
 36
 Carter, 436 F.Supp. at 35. In this case, the contacts of defendant with Maryland increased after the accident and continued after plaintiff filed this suit. Therefore, defendant's contacts with Maryland are not insufficient because of their timing.
 
 II.
 
 37
 The majority opinion stresses inter alia that "[a] non-resident [who] may often traverse the highways of another state" should not under "traditional notions of fair play and justice" be "hailed into the courts of that state to defend a lawsuit arising out of his conduct in another state." Opinion of Majority, at 8. (emphasis in original). But in this case, defendant's activities within Maryland, beginning in 1986, and ending in 1989 about four months after the present cause of action was filed, constitute, in my view, sufficient "continuous and systematic" contacts with Maryland so as to warrant Maryland's longarm statutory jurisdictional reach. Accordingly, I respectfully dissent.